IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

JERRY A. BRABAZON, individually and on
behalf of all others similarly situated,

        Plaintiff,

        v.                                             Case No. 10-CV-714

AURORA HEALTH CARE, INC.,

        Defendant.

## AURORA HEALTH CARE, INC'S RESPONSE TO PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT FACILITATED NOTICE

Plaintiff's Motion for Conditional Class Certification should be denied because it fails to demonstrate that he and other putative class members were victims of an unlawful "common policy or plan" that deprived them of compensation under the Fair Labor Standards Act ("FLSA").

It is well established law that the mere act of an employee having to be able to hear and, if necessary, respond to a communication device like a radio, pager or cellular phone during their meal break does not automatically convert that break time into compensable work time. If an interruption does occur, and a security officer must respond, Aurora Health Care, Inc. ("Aurora") maintains an explicit written policy and practice of allowing those security officers to cancel the automatic 30-minute lunch deduction, thereby ensuring those officer are compensated for all time actually worked.

Plaintiff's allegations that he and some other putative class members were "discouraged" by a few supervisors from availing themselves of Aurora's policy of cancelling their lunches falls short of even the modest factual showing necessary to conditionally certify a collective

action under the FLSA. Plaintiff submits no evidence that this alleged practice extended beyond a handful of supervisors, and, for the sake of argument, even if certain individual supervisors were not following Aurora's lunch cancellation policy, which Aurora denies, that simply does not translate into a collective claim that <u>all</u> officers should be paid for <u>all</u> lunch breaks regardless of whether they actually worked or not. Accordingly, Plaintiff's motion should be denied.

## I. REQUIRED SHOWING FOR ISSUING NOTICE

Where a collective action is proper, courts have the discretion to send notice of an FLSA claim under 29 U.S.C. §216(b) to individuals who are similarly situated to the named plaintiff. <u>Hoffman-LaRoche, Inc. v. Sperling</u>, 493 U.S. 165, 169 (1989); <u>DeKeyser v. Thyssenkrupp Waupaca, Inc.</u>, No. 08-C-488, 2008 U.S. Dist. Lexis 102318, at *5 (E.D. Wis. Dec. 18, 2008). While the Seventh Circuit has not addressed the issue, courts in this district and others apply a two-step method in determining who is similarly situated and, thus, entitled to notice. First, courts permit notice to be sent if a named plaintiff can make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." <u>Adair v. Wisconsin Bell, Inc.</u>, No. 08-C-280, 2008 U.S. Dist. Lexis 68942, at *8 (E.D. Wis. Sept. 11, 2008) <u>citing</u> <u>Austin v. CUNA Mut. Ins. Soc.</u>, 232 F.R.D. 601, 605 (W.D. Wis. 2006). The second step typically occurs after discovery, when the defendant asks the court to determine whether the opt-in plaintiffs are in fact similarly situated. <u>Espenscheid v. DirectSat USA, LLC</u>, No. 09-cv-625, 2010 U.S. Dist. Lexis 55579, at *17 <u>citing</u> <u>Austin</u>, 232 F.R.D. at 605.

At this first step, the plaintiff must demonstrate that there is some factual nexus that connects him to other potential plaintiffs as victims of an common unlawful practice. <u>Williams v. Cargill Meat Solutions Corp.</u>, No. 09-C-1006, 2010 U.S. Dist. Lexis 72025, at *4 (E.D. Wis. June 30, 2010); <u>Espenscheid</u>, 2010 U.S. Dist. Lexis 55579, at *16-17 <u>citing</u> <u>Sjoblom v. Charter</u>

Communications, LLC, 571 F. Supp. 2d 961, 967 (W.D. Wis. 2008). Although the burden a plaintiff bears in making a factual showing in support of conditional certification is "fairly low," the "modest factual showing" standard "is not a mere formality." Adair, 2008 U.S. Dist. Lexis 68942, at *9 (citations omitted).

The initial step serves as an important and functional step in the certification process. Where the plaintiff has not made at least a modest factual showing that certification is appropriate, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." Id.

## II. PLAINTIFF HAS FAILED TO SHOW A "COMMON POLICY OR PLAN" THAT DEPRIVED THE PUTATIVE CLASS FROM COMPENSATION UNDER THE FLSA.

Plaintiff argues that this matter should be conditionally certified because of Aurora's policy of taking an automatic 30-minute pay deduction from security officers who must remain "on-duty" during meal breaks. (Plaintiff's Memorandum in Support of Motion for Conditional Class Certification and Court Facilitated Notice at p.1-2 (hereinafter "Plaintiff's Brief"). The basis for Plaintiff's claim that officers remain on-duty is that they are required to be able to hear and, if necessary, respond to a communication device during their meal break. (Plaintiff's Brief at 5-6). This argument fails because simply carrying a radio or the like is not compensable time under the FLSA and because Aurora maintains a policy and practice to compensate security officers in the event their meal breaks are actually interrupted or missed.[1] To the extent that the

---

[1] Plaintiff's reliance on purported violations of Wisconsin law in support of his motion for conditional class certification under the FLSA is completely misplaced. Clearly, only alleged violations of the FLSA may be relied upon to support a claim that Plaintiff and any opt-in plaintiffs are similarly situated for purposes of conditional class certification under federal law. Plaintiff's state law claims involve a separate potential class of individuals and are the subject of a separate and different process under F.R.C.P. 23. Thus, for the purposes of this motion, the Court should disregard section III, B, 1 of Plaintiff's brief, which Plaintiff has titled as "On-Duty Meal Periods Are Compensable Under Wisconsin Law." (See Plaintiff's Brief at 18-20). Specifically, in that section, Plaintiff alleges

3

QB\12403938.4
Case 2:10-cv-00714-JPS   Filed 02/08/11   Page 3 of 13   Document 36

Plaintiff and certain opt-in plaintiffs believe they were discouraged from availing themselves of this policy because of the actions or comments of a few supervisors on certain occasions, that is an individual, highly fact-specific question and does not meet the criteria for collective certification under the FLSA. Moreover, Plaintiff has submitted no evidence that this alleged practice extends entity-wide.

First, Plaintiff does not, and cannot, claim that the automatic deduction was *per se* illegal. The mere fact that Aurora maintains an automatic 30-minute deduction policy for meal breaks is not unlawful under the FLSA. See Fengler v. Crouse Health Foundation, Inc., 595 F. Supp.2d 189, 195 (N.D.N.Y) ("the mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA"); see also Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked (2008) (similarly noting that it is permissible for employers to make an automatic deduction). Nor is evidence of a 30-minute automatic meal break deduction alone enough to satisfy the first-step of an FLSA collective certification analysis because it does not demonstrate that putative class members were victims of a common unlawful decision, policy or plan. See Saleen v. Waste Management, Inc., No. 08-4959, 2009 U.S. Dist. Lexis 49891, at *13 (denying collective certification and stating that an "automatic-deduction policy does not, on its face, state that employees will not be paid if they have worked through their meal breaks.") aff'd 649 F. Supp.2d 937 (D. Minn. 2009). Instead, Plaintiff insists that the automatic deduction becomes unlawful where security guards remain "on-duty" during their meal break because they

---

that security officers are not able to leave the premises for their lunch period resulting in a violation of Wisconsin law. Aurora denies this allegation because security guards are allowed to leave the premises during lunch. (See Declarations of Aurora security officers at ¶8, attached as Exhibit "A" to the Affidavit of Dawn E. Faucett). However, Aurora will reserve fully responding in substance to this allegation until the appropriate time.

are required to carry and respond to a communication device (e.g., a pager or two-way radio). (Plaintiff's Brief at 5-6).

The FLSA requires that an unpaid meal break be duty free. Although the FLSA does not explicitly define what it means to "work," regulations promulgated by the Department of Labor ("DOL") set out circumstances in which meal periods may be excluded from the calculation of hours worked:

> Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

29 C.F.R. § 785.19(a).

With this regulation in mind, the Seventh Circuit has adopted the "predominant benefit" test for determining whether meal periods constitute compensable work time under the FLSA. Leahy v. City of Chicago, 96 F.3d 228, n.2 (7th Cir. 1996); Alexander v. City of Chicago, 994 F.2d 333, 337 (7th Cir. 1993). Under the predominate benefit test, an employee is considered to be completely relieved from duty during a meal period when the employee's time is not spent predominantly for the benefit of the employer. Leahy, 96 F.3d at n.2. If during meal periods an employee's "time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then [the employee] is completely relieved from duty and is not entitled to compensation under the FLSA." Id.

Here, the security officer's obligation to carry and be able to respond to a communication device does not convert his meal break into time spent predominantly for the benefit of Aurora. In a similar case involving one of the same facilities at issue here, this Court held that Mount

Sinai Medical Center's[2] requirement that its security officers must listen and potentially respond to radios during their lunch hour was not compensable under the FLSA. Kaczmerak v. Mount Sinai Medical Center, No. 86-C-0472, 1988 U.S. Dist. Lexis 18680 (E.D. Wis. Feb. 24, 1988). Other district courts in the Seventh Circuit addressing similar situations have routinely held that the act of carrying a communication device and being subject to respond to a call does not convert an employee's bona fide meal break into compensable time. See e.g., Albee v. Village of Bartlett, 861 F. Supp. 680, 685 (N.D. Ill. 1994) (where police officers must remain in radio contact during an unpaid lunch period, the potential to be called to respond to an emergency "does not convert a free meal break into time spent predominantly for the benefit of the employer.") (citations omitted); In re: Chicago Police Department F.L.S.A. Meal Period Litigation, 1995 U.S. Dist. Lexis 4006, at *25-26 (N.D. Ill. Mar. 28, 1995) (hereinafter Chicago Police Department) ("the officers' responsibility to leave their radios on during lunch . . . [does not] inhibit these employees' ability to comfortably and adequately pass the mealtime" (citing Avery v. City of Talladega, 24 F.3d 1337, 1347 (11th Cir. 1994) and "the officers' responsibility to monitor their radios during lunch did not mean that the officers spent their meal breaks predominantly for the benefit of their employer" (citing Henson v. Pulaski County Sheriff Dept., 6 F.3d 531, 536 (8th Cir. 1993)).

Like the security officer in Mount Sinai, or the police officers in Albee and Chicago Police Department, Aurora's expectation is that security officers be able to hear and, if necessary, respond to emergency calls that come over a communication device during their lunch break. (Cummings Dep. Tr. at 108:17-109:4). Plaintiff essentially argues that he and other putative plaintiffs were so frequently interrupted during every lunch break that every meal period

---

[2] Mount Sinai Medical Center became part of the Aurora system in 1987. (See Deposition Transcript of Michael R. Cummings at 11:4-8 (hereinafter "Cummings Dep. Tr.")). The Cummings Deposition Transcript is attached in full as Exhibit "1" to Plaintiff's Affidavit of Attorney William E. Parsons.

6

should be considered work. (Plaintiff's Brief at p.5-6, 19). However, Plaintiff's own declarations demonstrate that he and potential collective class members are not similarly situated on this issue. Contrast the Declaration of named plaintiff Jerry Brabazon, who states he was "frequently interrupted," (J. Brabazon Declaration at ¶11) with the Declarations of Steven Lang, Tammy Witt, Steve Slutsky, and Frank Smith, who each concede that they were only "sometimes interrupted" by their communication device during their lunch break. (S. Lang Declaration at ¶11; T. Witt Declaration at ¶10; S. Slutsky Declaration at ¶11; F. Smith Declaration at ¶10). Further, over 70 other Aurora security officers acknowledge that they were "rarely interrupted" during their lunch break. (See Exhibit "A" at ¶7 of each declaration). Clearly all security officers are not interrupted as frequently as Plaintiff suggests, and rare or occasional interruptions do not turn a meal break into compensable time. As courts recognize, virtually any job can have demands during an employee's meal break. Bridges v. Amoco Polymers, Inc., 19 F. Supp.2d 1375, 1379 (S.D. Ga. 1997) ("most every employee in the Nation is subject to having his lunch hour interrupted by his employer in some fashion or another . . . ."). There are countless reasons why any individual officer may miss a particular meal break, and just because "some officers on some days miss all or part of their meal periods," does not mean that "all meal periods [are] compensable work" especially where the employer has a mechanism in place for compensating employees where their lunch is actually interrupted. See Leahy, 96 F.3d at 232 (granting summary judgment in favor of employer where collective bargaining agreement provided for payment to officers who are required to work during their lunch hour and refusing to sanction a result "where officers might be paid for doing nothing more than eating during their meal periods").

Moreover, Aurora undisputedly has a policy and practice in place that provides for security officers to be compensated on those occasions where their meal break is interrupted. For instance, Mike Cummings, Director of Loss Prevention Services, who is responsible for overseeing Aurora's security officers, stated that in the event a security officer is actually interrupted and is required to respond during their lunch break, Aurora's practice is to allow that officer to either restart his break or cancel the automatic deduction to his lunch in Aurora's time keeping system. (Cummings Dep. Tr. at 137:5-138:18). Mr. Cummings testimony comports with Aurora's explicit written policies, which state:

> In certain cases, employees do not have an uninterrupted 30 minute meal period because they are subject to resume working in less than a half hour. Such meal periods shall be considered time worked. All such cases are specifically authorized by a responsible Manager/Supervisor. Once approval is granted, employee must cancel meal through the automated Time And Attendance system at the end of their shift.
>
> See Aurora Health Care System Administrative Manual, Policy No: 34 Work Week/Meal & Rest Periods at Section II, D, attached as Exhibit "B" to the Affidavit of Dawn E. Faucett.

As Mr. Cummings noted, every time an officer cancels his lunch he is always paid. (Cummings Dep. Tr. at 139:7-8: "[I]f an officer didn't get lunch, they get paid for it, period, or if they got interrupted and didn't get back to take a full lunch hour."). This ensures that all officers are compensated for time spent working. Aurora's policy is similar to that which was summed up by the court in Chicago Police Department: "If the Officers do not work, they do not get paid. If the Officers work, they get paid. We find this policy to be logical." 1995 U.S. Dist. Lexis 4006, at *27; see also, Albee, 861 F. Supp. at 686 (finding it "highly significant" that any time a patrol officer or detective is actually forced to forgo any part of a meal because of an interruption, the department either reschedules his lunch (conditions permitting) for another full

30-minute break -- regardless of the time elapsed on the previous one -- or else compensates him or her for the entire period upon written submission of a compensation request.)

Although the named and opt-in plaintiffs acknowledge Aurora's lunch cancellation policy, some of them allege they were "discouraged" from utilizing it by certain supervisors. (Plaintiff's Brief at 9, 19; J. Brabazon Declaration at ¶9; S. Lang Declaration at ¶9; S. Slutsky Declaration at ¶9; E. Welniak Declaration at ¶8; L. Ward Declaration at ¶7; M. Emmerich Declaration at ¶10; L. Binter Declaration at 13; P. Lowery Declaration at ¶8). Thus, while they acknowledge that Aurora has an effective means of allowing them to cancel their lunch deduction in the event they do not receive an uninterrupted lunch, these individuals imply they did not utilize the cancellation procedure.

Indeed, the named Plaintiff, Jerry Brabazon, claims that he "rarely followed" the lunch cancellation procedure. (J. Brabazon Declaration at ¶9). That claim is belied, however, by objective payroll records. Specifically, from August 20, 2007 through October 1, 2010, Mr. Brabazon cancelled his lunch no less than 90 times![3] (See Affidavit of Carol C. Abing at ¶3). He was paid for every one of those more than 90 lunch cancellations. In fact, over that same time period alone, security officers working at Aurora facilities canceled their lunch nearly 2,000 times, each of which resulted in payment by Aurora. (See Affidavit of Carol C. Abing at ¶4).[4]

---

[3] In a Wisconsin Equal Rights Division charge brought against Aurora by former security officer Jerod Olsen, similar to claims made by Plaintiff here, Mr. Olsen alleged that he routinely worked through lunch breaks without pay. Finding in favor of Aurora, the Wisconsin Equal Right Division found persuasive that Aurora had an established lunch cancellation policy and that Mr. Olsen had in fact cancelled his lunch several times resulting in payment for those meal periods. See Olsen v. Aurora Bay Care Medical Center, ERD Case No. LS200903759 (Wis. Dept. of Workforce Development, Equal Right Division Dec. 1, 2010), attached as Exhibit "C" to the Affidavit of Dawn E. Faucett.

[4] In 2008, Aurora acquired Advanced Healthcare and formed the entity known as Aurora Advanced Healthcare. Aurora Advanced Healthcare employs approximately 10 security officers. Unlike Aurora, Aurora Advanced Healthcare allows its security officers to cancel their lunch even if they are not interrupted so that the security officer may leave their shift 30 minutes early. In contrast, Aurora does not allow security officers to cancel lunch in order to get off of their shift early. See Affidavit of Dawn E. Faucett at ¶6. As a result, over the same time period, security officers at Aurora Advanced Healthcare have cancelled their lunch nearly 4,000 times and those security officers have been compensated for each of those cancellations. See Affidavit of Carol C. Abing at ¶5.

9

Unlike those few security officers who claim they were discouraged from using Aurora's lunch cancellation procedure, over 70 other Aurora security officers have asserted that they have actually availed themselves of Aurora's lunch cancellation policy and that they have never been disciplined or threatened with discipline for taking a meal break or unfairly forced to miss or shorten their break. (See Exhibit "A" at ¶6-7, 9 of each Declaration).

The handful of declarations submitted by Plaintiff alleging that certain supervisors discouraged them from utilizing Aurora's established lunch cancellation procedure is not sufficient to merit conditional certification of a collective action because it fails to allege a common, company-wide unlawful policy, especially in light of the fact that many Aurora security officers, including the named and opt-in plaintiffs, were well versed in utilizing the Aurora's lunch cancellation policy. See Adair, 2008 U.S. Dist. Lexis 68942, at *19 (denying conditional class certification and stating that "[a]lleged FSLA violations stemming from the enforcement decisions of individual supervisors, rather than a company-wide policy or plan are not appropriate for collective treatment."); see also Thompson v. Speedway Superamerica LLC, No. 08-cv-1107, 2009 U.S. Dist. Lexis 3816, at *5-6 (D. Minn. Jan. 20, 2009) (denying conditional class certification because plaintiffs failed to submit evidence that the reason they were not compensated was because of a corporate decision to ignore [their employer's] published policies and not because of a rogue store manager); Pacheco v. Boar's Head Provisions Co., Inc., 671 F. Supp.2d 957, 963 (W.D. Mich. 2009) (denying conditional class certification where plaintiffs alleged that rogue supervisors did not follow otherwise lawful policy).

Determining the myriad reasons why security officers claim they had to work during lunch and believed they were discouraged by certain supervisors from using Aurora's lunch

10

cancellation policy is highly individualized and requires a fact intensive determination that is not appropriate for class certification. A collective action is simply a procedural device aimed at facilitating, in an efficient and cost effective way, the adjudication of numerous claims in one action. Where, as here, the evidence fails to show that there is a common policy or plan that adversely affects a group of similarly situated employees, then conditional certification should be denied because, as this Court said in <u>Adair</u>, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." 2008 U.S. Dist. Lexis 68942, at *9.

## III. ISSUES REGARDING PLAINTIFF'S PROPOSED NOTICE

If the Court does permit conditional certification of a class in this matter, Aurora has two objections to Plaintiff's Proposed Notice of Pendency of Lawsuit, which is attached as Exhibit 4 to the Affidavit of Attorney William E. Parsons is Support of the Motion for Conditional Class Certification and Court Facilitated Notice (hereinafter "Proposed Notice").

First, the Proposed Notice allows for an unacceptably long period of time (ninety days) for putative class members to opt-in. Assuming this Court rules on Plaintiff's Proposed Notice by the end of February or early March at the earliest, a 90-day opt-in period means that putative plaintiffs will have until the end of May or early June in which to opt-in. This means that plaintiffs could still opt-in about one month after the May 2, 2011 deadline for a motion to decertify the collective class. This would be prejudicial to Aurora because it would not know the scope of the class when its motion to decertify is due.

Instead, Aurora proposes a 45-day deadline for putative plaintiffs to opt-in. Given that the proposed class consists of just over two hundred people, and because Plaintiff is already in possession of the putative class members' contact information, this time frame should be

11

sufficient. Notably, other court's in this district have found a 45-day opt-in period appropriate. Williams, 2010 U.S. Dist. Lexis 72025, at *6 (ordering a 45-day opt-in period where 60 days was requested by plaintiff); DeKeyser, 2008 U.S. Dist. Lexis 102318, at *18 ("there is no indication why 45 days, an opt-in period ordered by other courts in FLSA actions, would not be sufficient time under these circumstances.").

Second, neither Plaintiff's Brief nor his Proposed Notice contemplate how the notice will be sent to putative members of the collective class. Given the relatively small size of the class, and because Plaintiff is already in possession of the mailing addresses of putative members of the class, Aurora suggests that notice via first-class mail is appropriate. See Reab v. Electronic Arts, Inc., 214 F.R.D. 623, 630 (D. Colo. 2002) (first class mail is the best notice practicable "because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members.").

## IV. CONCLUSION

Plaintiff has failed to allege a common policy or practice depriving the proposed class of compensation due under the FLSA. Although Plaintiff and the declarants may not like that they are asked to carry a communication device during their meal break or that they may be required to respond to an emergency call, these possibilities do not convert their meal break into compensable work. In compliance with the FLSA, where a security officer must respond during his or her lunch break, Aurora's policy and practice is to allow the officer either to restart his or her break later in the shift or cancel the lunch in Aurora's time keeping system and receive pay for it. To the extent that certain security officers believe they were discouraged from using the lunch cancellation procedure on occasion, those concerns are more appropriately addressed on an individualized basis and are not proper grounds for collective certification under the FLSA.

12

Accordingly, Plaintiff's motion should be denied.

Dated: February 8, 2011

                                                  Mary Pat Ninneman
                                                  State Bar No. 1016956
                                                  Sean M. Scullen
                                                  State Bar No. 1034221

                                                  s/ Sean M. Scullen
                                                  QUARLES & BRADY LLP
                                                  411 East Wisconsin Avenue
                                                  Suite 2040
                                                  Milwaukee, WI  53202-4497
                                                  (414) 277-5000
                                                  Attorneys for Defendant
                                                  Aurora Health Care, Inc.

Direct inquires to:

Sean M. Scullen
(414) 277-5421
Sean.Scullen@quarles.com