UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

JERRY A. BRABAZON, individually and
on behalf of all others similarly situated,

        Plaintiff,

v.                                Case No. 10-CV-714

AURORA HEALTH CARE, INC.,

        Defendant.
_____

# ORDER

Before the court is named plaintiff Jerry A. Brabazon's ("Mr. Brabazon") motion for conditional class certification and court facilitated notice pursuant to 29 U.S.C. § 216(b), filed January 18, 2011. (Docket #33). On August 20, 2010, Mr. Brabazon filed a complaint on behalf of himself and approximately 225 similarly situated security officers against defendant Aurora Health Care, Inc. ("Aurora"). (Docket #1). In his complaint, plaintiff alleges that defendant violated the Fair Labor Standards Act ("FLSA") by not compensating plaintiff and other members of the purported class for on-duty meal periods as required by the FLSA. ( Compl. ¶ 32).[1] For the reasons set forth below, the plaintiff's motion will be granted.

## BACKGROUND

The plaintiff has set forth the following facts to support his motion: Aurora provides health care through facilities in Wisconsin and Illinois. Aurora operates fifteen health care facilities in locations in Southern Wisconsin and Northern Illinois

---

[1]Plaintiff also brings a supplemental state law claim.

and employs security guards at each of these facilities. Mr. Brabazon was employed as a security officer by Aurora in Burlington and Elkhorn, Wisconsin, from March 2006 to September 2010. (Compl. ¶ 7; Brabazon Decl. ¶ 2).

Aurora security officers provide a variety of services to Aurora. These services include responding to difficult, disruptive, or emergency situations, responding to supply requests and maintenance calls, as well as performing less urgent tasks, such as patrolling the building, providing directions, opening doors, and handling valuables. (Binter Decl. ¶ 5; Brabazon Decl. ¶ 5; Emmerich Decl. ¶ 4; Lang Decl. ¶ 5; Lowerly Decl. ¶ 5; Smith Decl. ¶ 5; Slutsky Decl. ¶ 5; Ward Decl. ¶ 4; Welniak Decl. ¶ 4; Witt Decl. ¶ 5; Parsons Aff., Ex. 1 [Cummings Dep. 67:7-25, 68:1-21]).

Corporate Representative Michael R. Cummings testified that Aurora's main goal in employing security officers at its health care facilities is "to ensure . . . a safe and secure environment for [its] patients to receive health care and for [its] care-givers to deliver health care." (Parsons Aff., Ex. 1 [Cummings Dep. 66:8-11]) (Docket #35-1). Aurora subjects every security officer to training to meet Aurora's policies. (Cummings Dep. 50:24-25; 51:1-13). Specifically, security officers are trained and required to complete certification courses on how to perform certain aspects of the job – such as dealing with aggressive behavior and self-defense. (Cummings Dep. 57:21-15; 58:1-9). In order to perform some of the essential functions of their jobs, Aurora issues the security officers one or more communication devices at the beginning of their shifts. (Cummings Dep. 98:17-21). These devices are meant to be used to respond to both emergency and non-

emergency situations and Aurora expects the security officers to keep the devices on and monitor them throughout their entire shift, including during their unpaid meal breaks. (Cummings Dep. 107:11-15, 108:17-25, 109:1-16; Binter Decl. ¶ 8-9; Brabazon Decl. ¶ 7-8; Emmerich Decl. ¶ 6; Lang Decl. ¶ 7-8; Lowery Decl. ¶ 7; Smith Decl. ¶ 7-8; Slutsky Decl. ¶ 7-8; Ward Decl. ¶ 6; Welniak Decl. ¶ 6; Witt Decl. ¶ 7-8). Security officers must be ready and available to immediately react to emergency calls even during the unpaid meal period. (Cummings Dep. 87:20-25, 88:1-3, 109:12-15). Moreover, security officers are subject to discipline if they fail to respond to an emergency call during their unpaid meal period. (Cummings Dep. 109:9-11, Binter Decl. ¶ 10; Brabazon Decl. ¶ 10; Emmerich Decl. ¶ 8; Lang Decl. ¶ 10; Smith Decl. ¶ 9; Slutsky Decl. ¶ 10; Welniak Decl. ¶ 9; Witt Decl. ¶ 9). Security officers are commonly interrupted during their unpaid meal periods by emergency and non-emergency calls. (Binter Decl. ¶ 11; Brabazon Decl. ¶ 8; Emmerich Decl. ¶ 8; Lang Decl. ¶ 11; Lowery Decl. ¶ 10; Smith Decl. ¶ 10; Slutsky Decl. ¶ 11; Ward Decl. ¶ 9; Welniak Decl. ¶ 10; Witt Decl. ¶ 10). Because Aurora requires the security officers to immediately respond to calls and requests, the security officers are typically unable to leave the Aurora facility during their unpaid meal period. (Binter Decl. ¶ 9; Brabazon Decl. ¶ 12; Emmerich Decl. ¶ 9; Lang Decl. ¶ 12; Lowery Decl. ¶ 12; Smith Decl. ¶ 11; Slutsky Decl. ¶ 12; Ward Decl. ¶ 11; Welniak Decl. ¶ 11; Witt Decl. ¶ 11).

At each Aurora facility, security officers use a time clock – a Kronos Machine – to track the amount of time they work. (Cummings Dep. 128:5-14). Security

officers are paid based on the amount of time recorded in the Kronos system. (Parsons Aff., Ex. 1 [Kopf Dep. 10:18-22]). It is Aurora's policy to automatically deduct a thirty minute meal period from every security officer's pay for every shift he works of six hours or more. (Cummings Dep. 133:25, 134:1-6; Parsons Aff., Ex. 1 [Rountree Dep. 34:22-25, 35:1-3]). Aurora allows security officers who actively responded to a call or request to cancel the automatic deduction. (Cummings Dep. 140:7-18, 89:17-25, 90:1-25). However, Aurora does not permit the officers to cancel the deduction if they did not actively respond to a situation. Lastly, plaintiff alleges that for meal breaks during which an officer had to respond to a situation, the security officers were commonly discouraged by their supervisors, who had to approve the paid breaks, from recording a paid meal period. (Binter Decl. ¶ 13; Brabazon Decl. ¶ 9; Emmerich Decl. ¶ 10; Lang Decl. ¶ 9; Lowery Decl. ¶ 8; Slutsky Decl. ¶ 9; Ward Decl. ¶ 7; Welniak Decl. ¶ 8). In sum, plaintiff alleges that each of the 225 putative class members suffered an illegal wage deduction during every meal period of employment with Aurora, as the security officers were required to be readily available to respond to an urgent situation and were unable to leave the Aurora facility.

## DISCUSSION

FLSA provides that employees may recover unpaid overtime compensation by collectively suing an employer under certain circumstances. 29 U.S.C. § 216(b). Specifically, § 216(b) states:

-4-

> Any employer who violates [the maximum hours provisions] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be.... An action to recover [for such liability] may be maintained ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.

*Id.* To proceed collectively, the named plaintiff must, therefore, demonstrate that he is "similarly situated" to the opt-in plaintiffs – the employees he seeks to notify and represent. While the Seventh Circuit has not yet addressed the issue, courts in this district and other districts in this circuit, generally employ a two-phase inquiry in determining who is similarly situated and, thus, entitled to notice. First, the court will allow notice to be sent if the plaintiff can make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008) (citing *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006)); *Witteman v. Wisconsin Bell, Inc.*, 09-C-440, 2010 WL 446033, at *1 (W.D. Wis. Feb. 2, 2010). The second step typically occurs after discovery, when the defendant asks the court to determine whether the opt-ins are in fact similarly situated. *Adair*, 2008 WL 4224360, at *3.

This case is at the first stage. Mr. Brabazon's burden at this conditional certification stage is fairly lenient. *Id*. Moreover, the determination at this initial phase of inquiry does not involve adjudication of the merits of the claims. *Espenscheid v. DirecStat USA, LLC*, 09-C-625, 2010 WL 2330309, at *5 (W.D. Wis. June 7, 2010) (citing *Sjoblom v. Charter Communications, Inc.*, 571 F.Supp.2d 961,

967 (W.D. Wis. 2008)). Rather, the named plaintiff "must demonstrate only that there is some factual nexus that connects [him] to other potential plaintiffs as victims of an unlawful practice." *Id.* Significantly, the focus of this inquiry is "not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

Plaintiff asserts that he is similarly situated to "[a]ll persons who have been or are employed by Aurora and were denied minimum or overtime wages for on duty meal periods at any time three years prior to the commencement of this lawsuit to the present." (Compl. ¶ 8). Plaintiff posits one principal theory under the FLSA: Aurora's common policy of taking pay deductions from security officers who are required to remain on duty during their meal breaks violates the FLSA. Defendant does not dispute that named and opt-in plaintiffs perform similar job duties, that named and opt-in plaintiffs were all commonly subject to defendant's uniform automatic meal break deduction policy or that named and opt-in plaintiffs were subject to a common policy which requires them to monitor communication devices and to be ready and available to respond to emergency calls immediately. However, defendant does contest that Mr. Brabazon and the potential plaintiffs, together, were the victims of a common policy or plan that actually violates the FLSA. Specifically, Aurora contends that its auto-deduction policy does not, on its face, violate the FLSA and, therefore, the plaintiff's allegations are not appropriate for collective treatment because they state no claim.

The court agrees that simple allegations of the existence and implementation of a practice of making automatic deductions for scheduled meal breaks in and of itself is not "sufficient as a common denominator to permit a collective action" on behalf of all security guards subject to the practice. *Fengler v. Crouse Health Foundation, Inc.,* 595 F.Supp.2d 189, 195 (N.D.N.Y. 2009) (citing Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked (2008)). However, here, plaintiff has alleged more than just the existence of a common auto-deduction policy. Mr. Brabazon has taken his allegations a step further and contends the failure of Aurora to compensate employees who work through those unpaid meal breaks, by being readily available to respond to an emergency or other urgent situation, potentially violates the FLSA. Plaintiff supports his allegations with the declarations of nine putative plaintiffs and the deposition testimony of several corporate representatives from Aurora. Through this evidence, plaintiff has made a modest factual showing that security officers are required to monitor their communication devices during meal periods and they are required to remain available to immediately respond to situations if they arise, yet they are not compensated for this time. Furthermore, plaintiff has also shown the security officers are generally unable to leave the premises during their meal periods due to Aurora's policy that an immediate response from the security guard is necessary if they are called. Indeed, plaintiff has also demonstrated that the security officers are subject to discipline if they do not immediately respond to an emergency call. The

court finds this evidence, on its own, to meet the lenient similarly situated standard for conditional certification of a collective action.

Defendant spends much of its response brief arguing that requiring security officers to listen and possibly respond to radios or other communication devices during their lunch period is not compensable under FLSA because this time is not spent predominantly for the benefit of Aurora. *See Leahy v. City of Chicago*, 96 F.3d 228, n. 2 (7th Cir. 1996) (adopting the "predominant benefit" test for determining whether meal periods constitute compensable work time under FLSA). As previously noted, however, the conditional certification inquiry should not delve into the merits of a plaintiff's claim. The debate over the compensability of meal breaks is better left for another day.

Additionally, Aurora argues that named plaintiff and the putative plaintiffs are not similarly situated as to Mr. Brabazon's allegations that the security officers were so frequently interrupted during every lunch break that every meal period should be considered work. It is true that some security officers declared they were frequently interrupted, while others declared they were sometimes interrupted during their lunch breaks. (Binter Decl. ¶ 11; Brabazon Decl. ¶ 8; Emmerich Decl. ¶ 8; Lang Decl. ¶ 11; Lowery Decl. ¶ 10; Smith Decl. ¶ 10; Slutsky Decl. ¶ 11; Ward Decl. ¶ 9; Welniak Decl. ¶ 10; Witt Decl. ¶ 10). However, simply because some security officers conceded they were "sometimes interrupted" instead of "frequently interrupted" does not mean that Mr. Brabazon has failed to demonstrate he and the putative plaintiffs together were the victims of a common policy or plan that potentially runs afoul of the

-8-

FLSA. The more significant point is that no matter how the security officers described the frequency of the interruptions, all attested to the fact that Aurora's policy requiring immediate responses from the officers restricted the security officers from ever leaving the facility during their unpaid breaks. (Binter Decl. ¶ 9; Brabazon Decl. ¶ 12; Emmerich Decl. ¶ 9; Lang Decl. ¶ 12; Lowery Decl. ¶ 12; Smith Decl. ¶ 11; Slutsky Decl. ¶ 12; Ward Decl. ¶ 11; Welniak Decl. ¶ 11; Witt Decl. ¶ 11). Though the frequency of the interruptions will certainly bear upon the question of compensability, the court does not find it necessary to deny conditional certification on this issue at this stage of the proceedings because, as discussed above, the plaintiff has set forth other facts sufficiently connecting the putative plaintiffs and himself to a common policy that potentially funs afoul of the FLSA.

Defendant also takes issue with plaintiff's allegations that the security officers were often discouraged from utilizing Aurora's lunch cancellation policy when they were interrupted during their meal break and actively responded to a situation. This cancellation policy requires the security officer to take affirmative action to receive payment for a meal break during which he performed compensable work. Defendant argues that the handful of declarations that plaintiff has submitted alleging that certain supervisors discouraged some officers from using the lunch cancellation procedure is not sufficient to merit conditional certification because it fails to allege a common, company-wide unlawful policy. The court agrees, that on its own, alleged FLSA violations stemming from steps taken by various individual supervisors, rather than a company-wide policy or practice, are not appropriate for collective treatment.

*See Adair*, 2008 WL 4224360, at *7-8. Some courts have conditionally certified collective actions based solely on the theory that these cancellation procedures inappropriately shift the employer's responsibility to ensure compensation for work suffered or permitted to the employee. *See Kuznyetsov v. W. Penn Allegheny Health Sys.*, No. 09-CV-379, 2009 U.S. Dist. LEXIS 47163, at *14-15 (W.D. Pa. June 1, 2009); *Camesi v. Univ. of Pittsburgh Med. Ctr.,* No. 09-85J, 2009 WL 1361265, at *4 (W.D.Pa. May 14, 2009); *see also* 29 C.F.R. § 785.13 ("[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed . . . . The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."). In this case, the court will refrain from basing its conditional certification on the cancellation policy, standing on its own, because there is an independent basis for conditionally certifying this as a collective action.

Taken together, plaintiff's allegations, which are supported by the declarations of nine putative plaintiffs and several corporate representatives from Aurora, demonstrate that he and the putative class members were victims of a common practice that may have resulted in improper compensation. Plaintiff's evidence is sufficient to create a reasonable inference that, for all security officers employed at Aurora and subject to the automatic meal break deduction, defendant ran afoul of the FLSA by failing to ensure that security officers were compensated for all work completed, even the inactive tasks of monitoring a communication device and remaining available to readily respond to emergency and non-emergency situations.

-10-

Case 2:10-cv-00714-JPS   Filed 03/28/11   Page 10 of 11   Document 47

At this stage of the proceedings, evidence of this common practice is sufficient to warrant conditional certification and notice to all security officers of Aurora.

Turning to the substance of the notice, the parties have agreed that a forty-five (45) day notice period is appropriate and that notice should be sent via first class mail. The court has no objection to this proposed notice.

Accordingly,

**IT IS ORDERED** that plaintiff's motion for conditional certification and court facilitated notice (Docket #33) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiff is authorized to give notice of this lawsuit to all putative members of the class, with a 45-day opt-in period. Such notice may be sent via first class mail.

Dated at Milwaukee, Wisconsin, this 28th day of March, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge