JERRY A. BRABAZON
individually and on behalf
of all others similarly situated,

          Plaintiff,

vs.

AURORA HEALTH CARE, INC.

          Defendant.

Civil Action No. 710
Case No: 10-C-0714
Jury Trial Demanded

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
RULE 23 CLASS CERTIFICATION**

## INTRODUCTION

The Plaintiff has demonstrated through unrefuted evidence that a common issue predominates over any alleged individual issues related to his meal period claim. Specifically, the Plaintiff and putative class members were commonly subject to a policy requiring them to remain on duty and at the Aurora Health Care, Inc. (Aurora) facility where they were employed during unpaid meal periods. The Plaintiff has offered Aurora's own time records showing that the Plaintiff and opt-in Plaintiffs never left the Aurora facility during their unpaid meal periods. The Plaintiff further offered the deposition and declaration testimony of each one of these individuals, all of whom confirmed that they never left the premises during their unpaid meal periods.

Aurora has not refuted the Plaintiff's evidence that he and the putative class members never left the Aurora facility during their unpaid meal periods. Rather, Aurora has ignored this evidence and offered arguments that fail to address the central issue raised by Plaintiff's Motion

for Rule 23 Class Certification. That is, under Wisconsin wage and hour law, a meal period during which the employee is not free to leave the employer's premises **is compensable**. Thus, the Plaintiff's evidence that the putative class of security officers could not and did not leave the premises during their unpaid meal periods not only is common to the class, but is dispositive of their Wisconsin unpaid meal period claim. It is this Wisconsin law meal period claim under which the Plaintiff seeks Fed. R. Civ. P. 23 certification. Because this factual issue is common to the class, and because it predominates over individual issues (as it is dispositive of the claim), the Plaintiff requests that the Court grant his motion for class certification pursuant to Fed. R. Civ. P. 23.

## FACTS MATERIAL TO PLAINTIFF'S REPLY

### I. AURORA'S TIME RECORDS

Michael Cummings (Cummings), Aurora's Director of Loss Prevention, is the head of security for the entire Aurora system. (Dkt. 35, Exhibit 1 to Parsons' Affidavit in Support of Plaintiff's Motion for Conditional Class Certification and Judicial Notice, Deposition Transcript of Aurora's Corporate Representative Michael Cummings (Cummings Depo. at 13:10-13). Cummings has confirmed that every Aurora security officer must punch the time clock upon leaving the facility for an off-site meal period, and upon returning to the facility. Cummings' affidavit submitted in support of Defendant's Response to Plaintiff's Motion for Rule 23 Class Certification states that "[o]fficers who choose to leave the premises are required to punch in and out of the Kronos time keeping system while they are off-site." (Dkt. 63-2 at ¶5; see also Dkt. 35, Cummings Depo. at 130:14-22.)

Plaintiff's Rule 23 Class Certification motion included a summary of the time clock records of nine Plaintiffs who had joined the case at the time the Plaintiff filed said motion. (See

2

Case 2:10-cv-00714-JPS   Filed 05/02/11   Page 2 of 14   Document 78

Dkt. 49-1, Exhibit 6 to Attorney Parson's Affidavit, Kronos Time Records of Brabazon and Opt-in Plaintiffs). That exhibit summarized the time clock records of each of the nine Plaintiffs' more than one thousand shifts, and revealed no instances where one of these individuals punched out for a thirty minute meal period. (Id.) These records are consistent with the declaration and deposition testimony of these nine individuals. These security officers have explicitly stated that because of Aurora's requirement that they immediately respond to emergencies during unpaid meal periods, they were unable to leave the facility. (Dkt. 23, Binter Dec., ¶ 9; Dkt. 24, Brabazon Dec., ¶ 12; Dkt. 25, Emmerich Dec., ¶ 9; Dkt. 26 Lang Dec., ¶12; Dkt. 27, Lowery Dec., ¶ 12; Dkt. 28, Smith Dec., ¶ 11; Dkt. 29, Slutsky Dec., ¶12; Dkt. 30, Ward Dec., ¶11; Dkt. 31, Welniak Dec., ¶ 11; Dkt. 32, Witt Dec., ¶ 11; Dkt. 49-1, Parsons' Affidavit in Support Plaintiff's Motion for Rule 23 Class Certification ¶ 11, Exhibit 1, Deposition Transcript of Jerry Brabazon (Brabazon Depo.) at 132:17-25; 131:25; Dkt. 49-1, Parsons' Affidavit in Support Plaintiff's Motion for Rule 23 Class Certification ¶ 11, Exhibit 2, Deposition Transcript of Lisa Schultz (Schultz Depo. at 117:4-6.)

Beyond this, the Plaintiff now submits similar summaries of time records for six Plaintiffs who have joined the action since the Plaintiff filed his Motion for Class Certification. These records provide similar evidence that those individuals, who worked at different facilities than the original nine declarants, did not leave the Aurora facility during any of their unpaid meal periods. (Exhibit 1 to Attorney Parsons' Affidavit submitted in Support of Plaintiff's Reply Memorandum in Support of Motion for Rule 23 Class Certification (Parsons' Aff.), Kronos Time Records of Six Opt-in Plaintiffs.)

Despite the testimony and evidence from sixteen security officers working at thirteen Aurora facilities, Defendant's response offers no contrary explanation as to why these records of

3

more than 2,500 shifts worked by these security officers show no record of an individual clocking out for an off-site meal period.

## II. MIKE CUMMINGS' AFFIDAVIT CONTRADICTS HIS PREVIOUS DEPOSITION TESTIMONY

As discussed previously, Cummings is Aurora's Director of Loss Prevention and has authority over all of its security officers. During the December 6, 2010 Fed. R. Civ. P. 30(b)(6) deposition, Cummings testified on behalf of Aurora as follows:

> **Q:** And the officer would be expected to react to the call, an emergency call, even if he or she were on a meal break?
>
> **A:** Correct.
>
> **Q:** Failing to do so could result in discipline, correct?
>
> **A:** It could.
>
> **Q:** And I think I had asked this, but they're expected to react **immediately** to an emergency call, even if on a meal break?
>
> **A:** Yes. If it's a true emergency, yes, **definitely**.

(Cummings Depo.) at 109:5-11)(emphasis added).

Despite Cummings' unequivocal statement that an officer "definitely" must react to an emergency situation **immediately**, even if he is on his unpaid meal period, he now has submitted an Affidavit stating that a response time of 15 minutes was permissible. (Dkt. 63-2 at ¶ 7). Cummings also previously testified that an officer could be subject to discipline for not responding to an emergency immediately. Nevertheless, despite this prior testimony, his recent Affidavit states that an officer who responded in less than fifteen minutes would not be subject to discipline. (Id. at ¶ 10.)

4

Clearly a response time of fifteen minutes, in an emergency (such as a fire, situations involving physical violence to staff or patients, or other life-threatening matters), is not an "immediate" response. Merriam-Webster's Dictionary defines "Immediately" as "without interval of time." http://www.merriam-webster.com/dictionary/immediately. No reasonable person could understand "immediately" to mean within fifteen minutes and Defendant does not explain Cumming's contradictory statements.

Unlike Cummings' contradictory statements, Plaintiff and opt-in Plaintiffs have consistently testified in accord with Cummings' previous testimony. That is, an immediate response is expected and an officer could be disciplined for a delayed response. (Cummings Depo. at 109:5-11; Dkt. 23, Binter Dec. ¶ 10; Dkt. 24, Brabazon Dec. ¶ 10; Dkt. 25, Emmerich Dec., ¶ 8; Dkt. 26, Lang Dec., ¶ 10; Dkt. 28, Smith Dec., ¶ 9; Dkt. 29, Slutsky Dec., ¶ 10; Dkt. 31, Welniak Dec., ¶ 9; Dkt. 32, Witt Dec., ¶ 9, Brabazon Depo. at 131:25; 132:1-6; Schultz Depo. at 67:5-8; 71:4-8; 81:25; 82:1-9; Dkt. 49-1, Parsons' Affidavit in Support Plaintiff's Motion for Rule 23 Class Certification ¶ 11, Exhibit 3, Deposition Transcript of Eric Snowden (Snowden Depo.) at 49:2-21; 117:10-19; 119:17-22; Dkt. 49-1, Parsons' Affidavit in Support Plaintiff's Motion for Rule 23 Class Certification ¶ 11, Exhibit 4, Deposition Transcript of Patrick Lowery (Lowery Depo.) at 37:7-10; 60: 7-9; Dkt. 49-1, Parsons' Affidavit in Support Plaintiff's Motion for Rule 23 Class Certification ¶ 11, Exhibit 5, Deposition Transcript of Kyle Stoxen (Stoxen Depo.) at 49:6-14; 50:15.)

### III. AURORA SECURITY OFFICERS WORKING AT ALL AURORA LOCATIONS AND SHIFTS WERE SUBJECT TO THE SAME POLICY AND UNABLE TO LEAVE THE AURORA FACILITY DURING THEIR UNPAID MEAL PERIOD

The Plaintiff and opt-in Plaintiffs have offered the testimony of Aurora security officers working at thirteen facilities throughout Aurora's health care system:

|    | Aurora Location | Security Officer(s) at Location |
|----|-----------------|--------------------------------|
| 1  | Aurora Sheboygan Memorial Medical Center | Steven Lang |
| 2  | Aurora Medical Center Hartford | Frank Smith |
| 3  | Aurora Psychiatric Hospital | Lonnie Ward |
| 4  | Aurora Medical Center, Kenosha | Tammy Witt |
| 5  | St. Luke's Hospital | Jennifer Wagner |
| 6  | St. Luke's South Shore | Jennifer Wagner |
| 7  | Sinai Medical Center | Robert Peppler |
| 8  | Aurora Medical Center, Two Rivers | Erica Behrendt |
| 9  | Aurora Advanced, Good Hope Road | Leroy Fields |
| 10 | Aurora Advanced, Mayfair Road | Leroy Fields |
| 11 | Aurora Memorial Hospital of Burlington, Wisconsin | Lucas Binter<br>Jerry Brabazon |
| 12 | Aurora Summit Hospital | Jeff Fidlin |
| 13 | Aurora Lakeland Medical Center | Michael Emmerich, Patrick Lowery, Steve Slutsky, Robert Meyer, Lucas Binter, Jerry Brabazon, James Howe |

(Dkt. 73, Declaration of Jeff Fidlin (Fidlin Dec.) at ¶ 2; Dkt. 70, Declaration of Robert Meyer (Meyer Dec.) at ¶ 2, Dkt. 71, Declaration of Leroy Fields (Fields Dec.) at ¶ 2; Dkt. 72, Declaration of Jennifer Wagner (Wagner Dec.) at ¶ 2; Dkt. 69, Declaration of Robert Peppler (Peppler Dec.) at ¶ 2; Dkt. 75, Declaration of Erica Behrendt (Behrendt Dec.) at ¶ 2; Dkt. 74, Declaration of James Howe at ¶ 2; Dkt. 23, Binter Dec., ¶ 2; Dkt. 24, Brabazon Dec., ¶ 2; Dkt. 25, Emmerich Dec., ¶ 2; Dkt. 26 Lang Dec., ¶ 2; Dkt. 27, Lowery Dec., ¶ 2; Dkt. 28, Smith Dec., ¶ 2; Dkt. 29, Slutsky Dec., ¶ 2; Dkt. 30, Ward Dec., ¶ 2; Dkt. 31, Welniak Dec., ¶ 2; Dkt. 32, Witt Dec., ¶ 2.)[1]

---

[1] Plaintiffs have submitted testimony from all but 3 Aurora facilities, those facilities located in Green Bay, Oshkosh and Grafton, Wisconsin.

6

These security officers worked all three work-shifts: first (7:00a.m. to 3:00p.m.), second (3:00p.m. to 11:00p.m.), and third (11:00p.m. to 7:00a.m.) (Id. at ¶¶ 2-4). Further, these security officers worked Monday through Friday, as well as weekend shifts. (Id.) Each of these security officers has provided testimony that they were prevented from leaving the Aurora facility because of Aurora's requirement that they respond immediately to emergency calls at all times, even during their meal periods. (Dkt. 73, Fidlin Dec. ¶¶ 8,9; Dkt. 70, Meyer Dec. ¶¶ 8,9, Dkt. 71, Fields Dec. ¶¶ 8,9; Dkt. 72, Wagner Dec. ¶¶ 8,9; Dkt. 69, Peppler Dec. ¶¶ 8,9; Dkt. 75, Behrendt Dec ¶¶ 8,9; Dkt. 74, Howe Dec. ¶¶ 8,9; Dkt. 23, Binter Dec., ¶ 9; Dkt. 23, Brabazon Dec., ¶12; Dkt. 26, Lang Dec., ¶12; Dkt. 27, Lowery Dec., ¶12; Dkt. 28, Smith Dec., ¶ 11; Dkt. 29, Slutsky Dec., ¶12; Dkt. 30, Ward Dec., ¶11; Dkt. 31, Welniak Dec., ¶11; Dkt. 32, Witt Dec., ¶11; Brabazon Depo. at 87:9-11; Snowden Depo. at 52:21-23; Stoxen Depo. at 40:23-25; 49:2; Slutsky Depo. at 141:16-22.) The testimony of these sixteen Plaintiffs, working at thirteen different locations confirms that Aurora's policy, uniformly and without variation between facilities or between shifts, prevented security officers from leaving the premises during their meal periods.

## ARGUMENT

I. **INDIVIDUAL ISSUES DO NOT PREDOMINATE AS SECURITY OFFICERS' INABILITY TO LEAVE THE AURORA FACILITY DURING MEAL PERIODS IS DISPOSITIVE OF THEIR MEAL BREAK CLAIM**

Under Wisconsin law, a plaintiff can establish liability for a meal period violation if he is unable to leave the employer's facility during the unpaid meal period. Wis. Admin. Code DWD § 272.04(1)(c). Aurora's uniformly enforced meal period policy commonly impeded officers

from leaving the facility during their meal periods. As such, this common issue predominates over any alleged individual issue.[2]

Aurora's response cites to the portion of the Wisconsin Administrative Code's meal period requirements that mirror the federal regulations. Aurora, however, fails to take note of, or cite to, those portions of Wisconsin's Administrative code which offer protections beyond the FLSA. (See Dkt.63, Defendant's Response to Plaintiff's Motion for Rule 23 Class Certification (Def.'s Brief) at 15 (comparing Wis. Admin. DWD § 272.12(2)(c)(2) and 29 C.F.R. § 785.19(a))).[3] Citing only to these regulations, Aurora focuses its argument on whether the Plaintiff will be able to establish liability under the FLSA's "predominant benefit" test. (See Dkt. 63, Def's Brief at 16 -17).[4] This omission is significant and misleading, as it ignores the portion of the regulations pertaining to the impact on an employee's inability to leave the employer's premises during an unpaid meal period. That regulation states:

> Employer must pay all employees for "on duty" meal periods. Such periods are to be counted as work time. An "on duty" meal period is one where the employer does not provide at least 30 minutes free from work. **Any meal period where the employee is**

---

[2] The Plaintiff seeks to certify the class as defined in his first amended complaint. See Plaintiff's First Amended Collective and Class Action Complaint at ¶ 9. Any variation in the definition of the class contained in the Plaintiff's Memorandum in Support of Rule 23 Class Certification or Proposed Notice was inadvertent.

[3] The FLSA sets a floor, rather than a ceiling, and states are free to offer greater protection to its workers than the FLSA offers. Pacific Merchant Shipping Ass'n v. Aubry, 918 F.2d 1409, 1423-25 (9th Cir.1990); Spoerle v. Kraft Foods Global, Inc., 614 F.3d 427, 430 (7th Cir. 2010); 29 U.S.C. § 218(a).

[4] Defendant's citations to series of cases considering Rule 23 certification of claims under California state law are similarly inapposite as none of those cases consider Wisconsin's rule regarding restriction of movement during meal periods, or any similar California law analog. See Defendant's Brief at 18-19, citing Helm v. Alderwoods Group, Inc., 2011 U.S. Dist. LEXIS 29108, *23-24 (N.D. Cal. 2011), Washington v. Joe's Crab Shack, 271 F.R.D. 629 (N.D. Cal. 2010); Gabriella v. Wells Fargo, 2008 WL 3200190 (N.D. Cal. 2008); Kenny v. Supercuts, Inc., 2009 WL 2265194, *6 (N.D. Cal. 2008); Salazar v. Avis Budget Gp., Inc., 2008 WL 2676626 (S.D. Cal. 2008); Lanzarone v. Guardsmark Holdings, Inc., 2006 WL 4393465 (C.D. Cal. 2006). Unlike these California cases, no individual determination is needed regarding why a particular meal period is compensable, as the fact that Plaintiffs were uniformly unable to leave the employer's premises renders the meal periods compensable under Wisconsin law.

8

> **not free to leave the premises of the employer will also be considered an "on duty" meal period.**

Wis. Admin. DWD § 272.04(1)(c) (emphasis added). Thus, Defendant's statement that "[i]n order to establish liability, each individual officer must demonstrate that he actually worked during his lunch break" is patently false, and a misstatement of the law. (Def.'s Brief at 17).

Rather, to establish liability under Wisconsin law, which is the proper subject of the Plaintiff's Motion for Rule 23 Class Certification, it is sufficient that the Plaintiff show that he and the class members were "not free to leave the premises of the employer" during their unpaid meal period. Wis. Admin. DWD § 272.04(1)(c). Because the Plaintiff has established, through common proof, that Aurora's policy uniformly prohibited the security officers from leaving the Aurora facility during their unpaid meal period, that common issue predominates over any individual issues and merits class certification.

"A claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." In re Cardizem CD Antitrust Litig., 200 F.R.D. 297, 307 (E.D. Mich. 2001). Common questions need only predominate; they need not be dispositive of the litigation. In re Potash Antitrust Litig., 159 F.R.D. 393, 693 (S.D. Ohio 2007). The existence of individual issues, therefore, do not defeat class certification. In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 186 (D.N.J.2003).

### i. Individual Issues Related to Class Member's Job Duties Do Not Predominate

Aurora points to a number of allegedly individual differences amongst the security officer class; however, the potential existence of these minor individual distinctions does not impact the more significant point. That is, the dispositive issue in this case can be established through

9

common proof, as Aurora maintained a uniformly enforced policy, which rendered unpaid meal periods compensable under Wisconsin law. Specifically, Aurora alluded to differences in job duties between class members, although it is not clear what differences Aurora refers to or the impact of these allegedly differing job duties on the uniform meal period policy. (Dkt. 63, Def.'s Brief at 6.) To the extent that individual differences may exist with regard to performance of job duties, and the Plaintiff does not concede that any significant differences do exist, every security officer, without regard to location, shift, or any other variance, must be ready and available to respond to emergencies immediately, during his unpaid meal period. The existence of this uniform requirement is dispositive of the Plaintiff's Wisconsin meal break claim, and is a common issue that predominates in this case.

### ii. Individual Issues Related to Defendant's Meal Period Cancelation Procedure Do Not Predominate

Aside from job duties, Aurora also alludes to the existence of a meal break "cancellation" procedure, and suggests that because the procedure may not have been uniformly followed, individual questions arise. (See Dkt. 63, Def.'s Brief at 10-13). Again, there is a disconnect between what is ultimately at issue in the Plaintiff's state law challenge and Defendant's position regarding alleged individual issues. The Plaintiff has alleged that security officers' inability to leave the premises during their meal periods renders the meal periods compensable under Wisconsin law. The fact that an officer could, by following Defendant's meal cancellation procedure (which improperly shifts the burden to properly track compensable time to the employee), gain a paid meal period if the meal period was interrupted, has no bearing on the fact that the Plaintiff and putative class members were unable to leave the facility during those meal periods that they did not "cancel" due to an interruption.

10

Rather, Aurora's common and uniform policy requiring the Plaintiff and putative class members to be ready and available to respond to emergency calls immediately during their meal periods prevented them from leaving the facility and rendered those meal periods compensable. Aurora's argument regarding its meal period cancellation policy fails to address Plaintiff's central argument for Rule 23 class certification.

### iii. Individual Issues Regarding How Security Officers Spent the Unpaid Meal Period Do Not Predominate

Aurora's arguments regarding how security officers passed the time during their meal periods are unpersuasive for similar reasons. (See Dkt. 63, Def's Brief at 9-10). Under Wisconsin law, even those meal periods where an employee could, for thirty uninterrupted minutes, engage in activities such as reading, listening to a radio, speaking on the phone, or using the internet, are compensable if an employee is not free to leave the employer's premises. The regulation is clear on this point: "Any meal period where the employee is not free to leave the premises of the employer will also be considered an 'on duty' meal period." Wis. Admin. DWD § 272.04(1)(c). There is no requirement that the individual perform active or inactive labor during the meal period in which he is not free to leave the employer's premises to render the meal period compensable.

Because the Plaintiff is able to establish, through common proof, that Aurora's uniform policy requiring immediate response to emergencies during unpaid meal periods prevented security officers from leaving the premises during said meal periods, individual issues do not predominate and Fed. R. Civ. P. 23 certification of his state law claims is merited.

## II. ALL AURORA SECURITY OFFICERS, WITHOUT REGARD TO SHIFT OR LOCATION, WERE REQUIRED TO RESPOND IMMEDIATELY TO EMERGENCIES AT ALL TIMES AND THEREFORE COULD NOT LEAVE THE FACILITY DURING THEIR MEAL PERIODS

The Plaintiff, with his motion for Conditional Class Certification, submitted declarations of ten individuals, working at five Aurora facilities, across the Aurora healthcare network. (Dkt. 23, Binter Dec., ¶ 2; Dkt. 24, Brabazon Dec., ¶ 2; Dkt. 25, Emmerich Dec., ¶ 2; Dkt. 26 Lang Dec., ¶ 2; Dkt. 27, Lowery Dec., ¶ 2; Dkt. 28, Smith Dec., ¶ 2; Dkt. 29, Slutsky Dec., ¶ 2; Dkt. 30, Ward Dec., ¶ 2; Dkt. 31, Welniak Dec., ¶ 2; Dkt. 32, Witt Dec., ¶ 2). Every one of these individuals provided testimony that "[b]ecause [he/she] was required to be ready and available to respond to calls, including emergency calls, during [his/her] meal period, [he/she] was unable to leave the Aurora facility during [his/her] meal period…" and that, because of this policy, they never left the facility during their unpaid meal period. (Dkt. 23, Binter Dec., ¶ 9; Dkt. 24, Brabazon Dec., ¶ 12; Dkt. 25, Emmerich Dec., ¶ 9; Dkt. 26 Lang Dec., ¶12; Dkt. 27, Lowery Dec., ¶ 12; Dkt. 28, Smith Dec., ¶ 11; Dkt. 29, Slutsky Dec., ¶12; Dkt. 30, Ward Dec., ¶11; Dkt. 31, Welniak Dec., ¶ 11; Dkt. 32, Witt Dec., ¶ 11). Since conditional certification was granted, and the notice period opened, Plaintiffs working at seven additional Aurora facilities have joined the lawsuit. Those individuals similarly provided testimony that because security officers "had to be available to respond to emergencies during their meal period" and that, because of this requirement, they were unable to and did not leave the facility during their unpaid meal periods. (Fidlin Dec. ¶¶ 8-10; Meyer Dec. ¶¶ 8-10, Fields Dec. ¶¶ 8-10; Wagner Dec. ¶¶ 8-10; Peppler Dec. ¶¶ 8-10; Behrendt Dec ¶¶ 8-10; Howe Dec. ¶¶8-10). These individuals provided further testimony that, "during [their] unpaid meal periods, [they were] required to be able to immediately respond to emergency situations," that they [were] never told that [they] had up to

12

15 minutes to respond to emergencies during [their] meal period" and "that an emergency necessitated a much more prompt response." (Id. at ¶ 9). In addition to working at thirteen different Aurora facilities, these security officers worked first, second, and third shift. (Id. at ¶ 3; Dkt. 23, Binter Dec., ¶ 5; Dkt. 24, Brabazon Dec., ¶ 5; Dkt. 25, Emmerich Dec., ¶ 2; Dkt. 26 Lang Dec., ¶4; Dkt. 27, Lowery Dec., ¶ 3; Dkt. 30, Ward Dec., ¶ 4; Dkt. 31, Welniak Dec., ¶ 4; Dkt. 32, Witt Dec., ¶ 4)

Despite this, Aurora argues that individual differences exist between shifts and facilities. (Dkt. 63, Def's Brief at p.8). Defendant does not offer testimony from any officer, working any shift at any Aurora facility, that the requirement to respond to emergencies immediately during unpaid meal periods differed in any fashion between facilities or shifts. Aurora does suggest that these factors may impact the likelihood of an interruption during the shift, however this question is independent of whether the officers were able to leave the facility during their meal period. The declaration and deposition testimony of sixteen individuals, working at thirteen Aurora facilities, confirms that Aurora's uniform requirement that security officers respond immediately to emergencies during their unpaid meal periods prevented them from leaving the facility during the unpaid meal period.

Aurora's uniform meal break policy, requiring immediate response to emergencies during unpaid meal periods, commonly prevented security officers from leaving the facility during their unpaid meal period. This is true across all Aurora facilities, without regard to which shift the officers worked. As such, individual issues do not predominate and class certification is warranted.

13

## CONCLUSION

The Plaintiff has presented overwhelming evidence that Aurora maintained a uniform and consistently enforced policy. This policy required that Aurora's security officer be able to respond immediately to emergency calls during their unpaid meal period. Plaintiff's evidence includes testimony from the Named Plaintiff, sixteen opt-in Plaintiffs, and Aurora's Director of Loss Prevention as well as Aurora's own time records. Aurora's security officers at all locations and across all shifts were unable to leave the Aurora facility during their unpaid thirty minute meal period due to this policy. This alone is dispositive of the Plaintiff's Wisconsin meal period claim, and predominates over any individual issue impacting that claim. The Plaintiff has met all of the Fed. R. Civ. P. 23 requirements for class certification. As such, he requests that the class be certified and notice in the form previously filed with the court be sent to the putative class members.

Dated: May 2, 2011

**HAWKS QUINDEL, S.C.**

By: _/s/ William E. Parsons_
William E. Parsons, State Bar No. 1048594
Email: wparsons@hq-law.com
David C. Zoeller, State Bar No. 1052017
Email: dzoeller@hq-law.com
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608 257-0040
Lynn Novotnak, State Bar No. 1005688
Email: lnovotnak@hq-law.com
Summer H. Murshid, State Bar No. 1075404
Email: scarlisle@hq-law.com
700 W. Michigan, Suite 500
PO Box 442
Milwaukee, WI 53201
Telephone: 414-271-8650