IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

JERRY A. BRABAZON, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.                                                                               Case No. 10-CV-714

AURORA HEALTH CARE, INC.,

    Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## INTRODUCTION

This settlement resolves the dispute between Aurora Health Care, Inc., Defendant, and its loss prevention officers, who allege that they were not paid for on-duty meal periods in violation of the Fair Labor Standards Act (FLSA) and Wisconsin law. Defendant denies Plaintiff's allegations. A Settlement Agreement was reached between the parties after extensive arm's length negotiations, and a successful mediation.[1] The parties requested that this Court preliminarily approve their settlement agreement on July 22, 2011, and certify the Rule 23 Settlement Classes. (Dkts. 94, 94.1). On August 4, 2011, this Court granted the parties' Joint Motion for Preliminary Approval of Class Action Settlement and, for purposes of settlement, certified the Settlement Classes. (Dkt. 101). Plaintiffs' Counsel moved

---

[1] The Settlement Agreement was attached as Exhibit 1 to the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, Dkt. 94.1.

separately for approval of their Petition for Attorneys' Fees and Costs on July 25, 2011. (Dkt. 98).

The parties now move the Court for a Final Order and Judgment of Dismissal with Prejudice to include the following:

1) Finally approving the Settlement Agreement, adjudging its terms to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

2) Finally approving the payment to the Class Representative;

3) Finally approving Class Counsel's petition for costs and attorneys' fees, and awarding Class Counsel attorneys' fees and costs;

4) Finally approving the settlement payments to be paid to the Class pursuant to the allocation formulas set forth in Section 3 of the Settlement Agreement;

5) Approving a 30 day extension of the Notice Period for Randy Cash, Chad Cooper, Geneta Kopatich, providing these individuals an opportunity to participate in the settlement, exclude themselves from the settlement, or file an objection to the settlement, and approving Notice to these individuals in the form attached as Exhibit A to the Joint Motion For Final Approval Of Class Action Settlement.

6) Dismissing the Lawsuit with Prejudice, and barring and permanently enjoining, to the fullest extent of applicable law, the Class Representative and all Class Members from pursuing Released Claims against the

Defendant, as set forth in Sections 3 of the Settlement Agreement.

## RELEVANT FACTS

### I. Procedural History and History of Settlement

Plaintiff filed his class and collective action complaint against Defendant on August 20, 2010. (Dkt. 1). Plaintiff alleged that Defendant maintained a policy requiring its security officers to remain on duty during their unpaid meal periods. (Id.) Plaintiff asserted claims under both Wisconsin law and the FLSA seeking compensation for the meal period deductions, as well as penalties and attorneys' fees. (Id.)

The Court conditionally certified Plaintiff's FLSA collective class on March 28, 2011. (Dkt. 68). Notice was mailed to the collective class and 49 individuals opted-in to the collective class prior to the end of the notice period. Prior to settlement, Defendant filed a Motion to Decertify Plaintiff's FLSA Collective Class (Dkt. 76), and Plaintiff moved to certify his state law class under Fed. R. Civ. P. 23 (Dkt. 49), which Defendant opposed (Dkt. 63). Prior to the Court's ruling on either of these motions, the parties requested that the Court grant them a stay of the litigation so that the parties may attempt to mediate the dispute. (Dkt. 85). After significant negotiations as well as a one-day mediation with an experienced class action mediator, Michael J. Leech, Esq., the parties reached a settlement and requested that the court stay its decision on the motions for Certification of Plaintiff's Fed. R. Civ. P. 23 class and Defendant's Motion to Decertify the Plaintiff's 29 U.S.C. § 216(b) class. (Dkt. 92).

At mediation, the parties successfully negotiated the broad outlines of a settlement agreement. During the weeks following mediation, the parties worked to complete the settlement, and presented the Settlement Agreement to the Court for Preliminary Approval. Preliminary Approval of the Settlement Agreement was granted by the Court on August 4, 2011. (Dkt. 101.)

The settlement agreement creates a common fund of $480,000 to resolve the claims of the Settlement Classes. Plaintiff's counsel agreed to petition the court for approval of attorney's fees and costs from the common fund not to exceed $170,000, an amount less than their actual attorney's fees. That petition was filed with the Court on July 22, 2011. (Dkt. 98.) The Settlement Agreement further provides that the Named Plaintiff, Jerry Brabazon, shall receive $15,000 for his service to the class. (Dkt. 94.1 at III(B)(a)). The remaining $295,000 is allocated to the Settlement Class members as consideration for their claims of back wages, compensatory, punitive or liquidated damages, penalties, prejudgment interestt and/or attorneys' fees.

## II. Calculation of Damages for Settlement Class Members

Damages for each of the 245 members of the settlement class were calculated pursuant to the formula set forth in the Settlement Agreement and as follows: Defendant provided Plaintiff with the complete meal period deduction data for every member of the Class, and Plaintiff's counsel was able to determine the exact number of meal periods deducted for each individual class member for the relevant statutory period. For each individual, the number of deducted meal periods was

4

then multiplied by the "regular rate" for each settlement class member. Regular rates were determined by totaling all hours worked, aside from overtime hours, and dividing by the total compensation received during the statutory period. For individuals who "opted-in" to the FLSA collective class, liquidated damages of double the back wages were then added to their total damages. See 29 U.S.C. § 216(b). For members of the Fed. R. Civ. P. 23 class, who did not "opt-in" to the FLSA collective class, a penalty of 50% of their back wages was added to their claim. See Wis. Stat. § 109.11(2)(a). Plaintiff's counsel then totaled the potential claims off all Settlement Class members and divided each individual claim amount by this number to create a pro-rata percentage for each Settlement Class member. The pro rata percentage was then multiplied by the $295,000 available to the Settlement Class to determine individual settlement amounts. Ultimately, 245 members of the settlement class were subject to approximately $410,000 in deductions for meal periods during the relevant two year statutory period. Payment of $295,000 represents, after payment for attorney's fees and payment to the Named Plaintiff, a recovery of the equivalent of 72% of all meal periods deducted during the relevant statutory period for each Settlement Class member.

### III. Settlement Participation

Plaintiff's counsel mailed Notice to the Settlement Class members on August 15, 2011. (Declaration of Attorney William E. Parsons in Support of Joint Motion for Final Approval ("Parsons Dec.") at ¶2). Due to the possibility of misinterpretation in the original Notice, the parties, after being granted Court

5

approval, sent a revised Notice to the class on August 25, 2011. (Parsons Dec. ¶3). Individuals had 60 days from the mailing of the supplemental notice to postmark timely claim forms, exclusions or objections to the settlement. (Dkt. 94-1 at VI).

As of the date of this motion, October 21, 2011, counsel has received timely Claim Forms and FLSA Settlement Offer and Release Forms from 144 individuals. (Parsons Dec. ¶4). Those 144 individuals, or 59% of the settlement class, are claiming $227,507.63 of the common fund. Thus, including the $15,000 payment to the Named Plaintiff, and attorney's fees and costs of $170,000, $412,507.63 of the total settlement fund of $480,000.00 has been claimed by the class. This amount represents 86% of the common fund. The parties anticipate that further settlement funds will be claimed in the coming days, as settlement participants have until October 24, 2011 to postmark a timely Claim Form or FLSA Settlement Offer and Release Form.

## ARGUMENT

### I. THE STANDARD FOR FINAL COURT APPROVAL OF CLASS AND COLLECTIVE WAGE AND HOUR ACTIONS

An FLSA settlement requires court approval in order to be valid and enforceable. Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986). Employees can only bargain, waive or modify their right to recovery if the parties agree to the terms of the settlement and the Court approves the settlement as a fair and reasonable resolution of a bona fide dispute over FLSA provisions. Lynn's Food Store, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982).

6

Similarly, a Fed. R. Civ. P. Rule 23(b)(3) class action may only be approved if (1) the individual Class Members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the Court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, the Court "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. United Founders Life Ins. Co. v. Consumers National Life Ins. Co., 447 F.2d 647, 655 (7th Cir. 1971)(internal quotations omitted). Other factors considered are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery complete; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

## II. THE PARTIES MADE SIGNIFICANT EFFORTS TO MAXIMIZE SETTLEMENT PARTICIPATION AND GUARANTEE AN ACCURATE AND COMPREHENSIVE CLAIMS PROCESS

As evidenced by the high level of participation in the settlement, the claims process agreed to by the parties was sufficient to inform Settlement Class Members of their rights under the settlement agreement.

Per the terms of the Settlement Agreement, Plaintiff's counsel mailed the agreed upon Notice of Class Action Settlement, Claim Form, and FLSA Settlement Offer and Release, attached as Exhibits 2-4 to the Settlement Agreement (Dkt. 94-1), to members of the Settlement Class and established a website which posted these documents. Each Settlement Class member was afforded 60 days from mailing of the Corrected Notice to return a timely claim form.[2] During the pendency of the Notice Period, Plaintiff's counsel labored to correct the addresses of any notices returned undeliverable. The correct addresses for all returned mail was successfully located by Plaintiff's counsel. (Declaration of Devona Gruber at ¶2).

Additionally, during the course of the Notice Period, Plaintiff's counsel learned that two groups of individuals were inadvertently not disclosed by Defendant prior to sending Notice to the Settlement Class. First, six individuals who were promoted to "Sergeant" during the class period were not included in the class list provided to Plaintiff's counsel for purposes of mailing notice. (Parsons Dec. ¶5). To correct this, the parties calculated these six individual's pro-rata share of the settlement using the same method as described above for all other class members. (Parsons Dec. ¶6). These six claims total $8,467. The parties then alerted the Court to the existence of these six individuals, and requested that the Court provide them 45 days from mailing of Notice to return a timely executed Claim Form. (Dkt. 104). The Court approved the parties' request, and Notice was mailed to these individuals. (Dkt. 105). Additionally, the parties agreed to amend the

---

[2] As noted above, a corrected version of the notice was sent on August 25, 2011. As a result, the Notice period was extend to 60 days from the dated of the Corrected Notice, as opposed to 60 Days from the original mailing date of August 15, 2011.

Settlement Agreement to provide payment for the claims of these individual from unclaimed settlement funds. As $79,674.15 remains unclaimed, ample funds remain to pay the claims of these individuals. (See Dkt. 104-1, Addendum to Settlement Agreement and Release of Claims).

In addition to the group of promoted Sergeants, Plaintiff's counsel learned of a second group of three individuals who were not included in the original class list shortly before filing this motion. (Parsons Dec. ¶7). This group includes three individuals who transferred from security officer to another job position within Aurora Health Care, Inc. during the statutory period. As with the group of promoted Sergeants, Plaintiff's counsel calculated the pro rata settlement share for each of these individuals, and the parties agreed to pay the claims of these individuals from the approximately $79,674.15 currently remaining unclaimed. These six claims total $1,665.87. With this motion for final approval, the parties request that the Court allow these three individuals an additional 30 days to choose to either participate in the settlement, to exclude themselves from the settlement, or to object to the settlement. In the event any objection is filed during this 30 day period, the parties will alert the court in order to set a time where the objection may be heard by Court.

Shortly before the close of the claims period, which ends on October 24, 2011, 144 individuals have claimed $227,507.63 of the available $295,000. Thus, the Settlement Class has claimed 77% of the settlement funds allocated to it directly. Further, with regard to the Gross Settlement Amount of $480,000, after provision

9

for payment to the Class Representative and payment of Class Counsel's attorney's fees and costs, the Class has claimed $412,507.63 or 86% of the Gross Settlement Amount.

This far exceeds typical participation rates for FLSA/Rule 23 state law wage and hour class actions. <u>Rosenburg v. Internat'l Business Machines Corp.</u>, Case No. 06-00430 PJH (N.D. Cal. July 12, 2007) (FLSA and New York, Kentucky and California state law claims, 30% response rate); <u>Adams v. Inter-Con Security Sys., Inc., Case No</u>. C-06-5428 MHP (N.D. Cal. Feb. 28, 2008) (FLSA and California, Illinois and Maryland state law claims - response rate of 37%). Further, the high percentage of settlement funds claimed (77%) far exceeds lower claim rates which have been granted approval. See <u>Williams v. MGM-Pathe</u>, 129 F.3d 1026, 1027 (9th Cir.1997) (approving a settlement in which $9,900 in claims were submitted against a $4.5 million fund); <u>West Virginia v. Chas. Pfizer & Co.</u>, 314 F. Supp. 710 (S.D.N.Y.1970) (approving a settlement with a .04% claims rate).

The high level of participation and the amount of settlement funds claimed support that the settlement is fair and reasonable, the parties therefore respectfully request that the Court grant final approval of this settlement.

### III. BENEFITS TO THE SETTLEMENT CLASSES

After provision for payments to the Class Representative and for the petitioned attorneys' fees and costs, the class members will be allocated $227,507.63. Individual allocations have been made based on the exact number of

10

meal periods deducted from the pay of each settlement class member, as well as the regular rate for each of these individuals.

The $227,507.63 allocated to the class represents recovery of 72% of all deducted meal periods during the two year period relevant to this litigation. This is an outstanding recovery for these individuals, who if left to prove their claims individually, would have to persuade a fact finder of the precise number of meal periods during which he or she was on duty or spending his or her time predominately for the benefit of Defendant. Whether the number of meal periods actually spent on duty would exceed 72% of all meal periods for each individual is not possible to ascertain. However, with the certainty of recovery through settlement, a recovery of the vast majority of all deducted meal periods certainly provides a substantial benefit to the Class. The high level of participation by the settlement class, and the complete absence of objections to the settlement, all support that this Settlement provides a substantial benefit to the Class and is a fair and reasonable compromise.

Because the settlement provides a significant benefit to the Class, the parties respectfully request that the Court find the settlement fair and reasonable and grant final approval of the settlement agreement.

### IV.  EXCLUSIONS AND OBJECTIONS

The Settlement Agreement provides a procedure for Class Members to object to the settlement or any of its terms, including payments to the Class Representative and counsel's petition for attorneys' fees. The Notice mailed to class

11

Case 2:10-cv-00714-JPS   Filed 10/21/11   Page 11 of 15   Document 108

members explains how class members should object to the settlement, if they so desired. Class members had 60 days from the notice mailing to object to the settlement. No class member has objected to the settlement, to the payment to the class representative, or to Plaintiff's counsel's attorney's fees.

The Settlement Agreement also allows class members to exclude themselves from the settlement by following a specific procedure. As with objections, the Notice mailed to the class members explains how Class Members could exclude themselves from the settlement, if they so desired. Class Members had 60 days from the notice mailing to opt out of the settlement. A total of 4 Settlement Class members chose to exclude themselves from the settlement, or 1.6% of the of the Settlement Class.

The parties believe the absence of objections to the settlement and the extremely low number of exclusions from the settlement support that the settlement is fair and reasonable, and provides adequately for the class members. See Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y.2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." (citations omitted)). For this reason, the parties respectfully request that the Court grant final approval of this class action settlement.

### V. PAYMENT TO CLASS REPRESENTATIVES

In addition to his damages for alleged unpaid on-duty meal periods, penalties, and attorneys' fees and costs, Plaintiff seeks approval of payment of $15,000 to the Named Plaintiff as a service payment for the benefit he provided to

the Class. Jerry Brabazon has worked closely with Class Counsel throughout this litigation. (Parsons Dec. ¶8). Information provided by Brabazon helped secure Conditional Certification of the Collective class, aided Counsel in preparation for mediation, and ultimately helped secure a successful settlement for the Class. (Parsons Dec. ¶9).

This payment is relatively low compared to payments to class representatives in similar matters. See, e.g., Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award of $50,000); In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000); Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 at *51-52 (N.D. Cal. Jan. 27 2007) (awarding $25,000 service award in FLSA overtime wages class action).

Given the results achieved by the Named Plaintiff and the services he performed on behalf of the Class, the parties believe that this Service Payment is fair and reasonable and request final Court approval of these amounts.

## VI. COSTS AND ATTORNEYS' FEES

On August 15, 2011, Class Counsel filed their petition for costs and attorneys' fees. (Dkt. 98). Class Counsel filed legal memorandum and declarations supporting their petition as well. (Dkts. 95-97, 99). For the reasons set forth in Plaintiffs' Counsel's petition and supporting memorandum, they request that their petition for attorneys' fees be approved along with this motion.

## VII. NOTE REGARDING CLASS ACTION FAIRNESS ACT

Pursuant to the Class Action Fairness Act ("CAFA"), Defendant submitted notice of the settlement of this matter to the appropriate federal and state authorities on August 1, 2011.  28 U.S.C. 1711 et seq.  CAFA allows these federal and state authorities 90 days to review the terms of the settlement and prohibits the entry of a final order within that period of time.  Accordingly, this Court may enter its final order on or after October 31, 2011.

## CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court enter an order and judgment granting final approval of the settlement of this dispute on the terms and amounts set forth in the Settlement Agreement.

Dated this 21st day of October, 2011 by:

        **HAWKS QUINDEL, S.C.**
        *Attorneys for the Plaintiffs*

    By:    */s/ William E. Parsons*
        William E. Parsons, State Bar No. 1048594
        Email: wparsons@hq-law.com
        David C. Zoeller, State Bar No. 1052017
        Email: dzoeller@hq-law.com
        222 W. Washington Avenue, Suite 450
        Post Office Box 2155
        Madison, Wisconsin 53701-2155
        Telephone: 608-257-0040
        Facsimile: 608-256-0236

        Summer H. Carlisle, State Bar No. 1075404
        Email: scarlisle@hq-law.com
        700 W. Michigan Ave, Suite 500
        Post Office Box 442
        Milwaukee, Wisconsin 53201-0442
        Telephone: 414-271-8650
        Facsimile: 414-271-8442

        **QUARLES & BRADY LLP**
        *Attorneys for Defendant*

    By:    */s/ Sean M. Scullen*
        Mary Pat Ninneman, State Bar No. 1016956
        Email: mary.pat.ninneman@quarles.com
        Sean M. Scullen, State Bar No. 1034221
        Email: sean.scullen@quarles.com
        Christopher L. Nickels
        Email: chris.nickels@quarles.com
        411 East Wisconsin Avenue, Suite 2040
        Milwaukee, Wisconsin 53202-4497
        Telephone: 414-277-5000
        Facsimile: 414-978-8978